# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR682 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| TAMIKO PARKER, | ) | GOVERNMENT'S SENTENCING AND |
| | ) | RESTITUTION MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, through Brian M. McDonough and Suzana K. Koch, Assistant United States Attorneys, and respectfully requests this Court to sentence Defendant Tamiko Parker to 33 months in prison, the maximum sentence within the Guidelines, and order her to pay $203,087.61 in restitution for her embezzling monies from the Collinwood & Nottingham Development Corp when she served as its executive director as detailed in this Sentencing and Restitution Memorandum.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:    /s/ Brian M. McDonough
       Brian M. McDonough (OH: 0072954)
       Suzana K. Koch (OH: 0073743)
       Assistant United States Attorneys
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3965/3748
       (216) 522-2403 (facsimile)
       Brian.McDonough@usdoj.gov
       Suzana.Koch@usdoj.gov

<u>**SENTENCING AND RESTITUTION MEMORANDUM**</u>

## I.    SUMMARY OF THE CASE

On November 14, 2018, the Grand Jury returned an Indictment against Defendant Tamiko Parker that charged her with one count of Theft Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(A).  (R. 4: Indictment).  On August 5, 2019, Parker entered a guilty plea to the Indictment without a plea agreement. (Minutes of Proceedings, August 5, 2019).

The facts underlying the charges and additional evidence developed through the investigation, are as follows.  From 2014 to 2016, Parker was employed as the executive director of the Collinwood & Nottingham Villages Development Corporation ("CNVDC"). The CNVDC was a non-profit 501(c)(3) tax-exempt organization incorporated in Ohio in 1982.  One of CNVDC's purposes was to acquire, own, lease, and developed real property in Cleveland, Ohio. The CNVDC was a government agency as defined by Title 18, United States Code Section 666(d)(2).  In calendar years 2014, 2015, and 2016, the CNVDC received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of Federal assistance.

In her role as executive director, Parker had access to CNVDC's bank accounts, credit cards, debit cards, statements, and checks. Parker misused various CNVDC accounts through a variety of schemes involving the following bank accounts: PNC x6451, Chase x6235, Chase x0354; and credit card accounts: Chase x3512 and Home Depot x8034.  Parker stole CNVDC's money for her personal benefit.

As charged in the Indictment, from in or about September 2014, continuing through in or about February 2016, Parker, being an agent of CNVDC, embezzled, stole, obtained by fraud, and without authority, knowingly converted to the use of a person not the rightful owner and

intentionally misapplied property worth at least $5,000 and owned by, under the care of, under the custody of, under the control of CNVDC that is, cash, checks, credit cards, and debit cards through various schemes. As a result of Parker's schemes, CNVDC suffered a loss of $203,087.61.

## II.  SENTENCING GUIDELINES CALCULATIONS

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guidelines range under 18 U.S.C. § 3553(a)(4). United States v. Thompson, 515 F.3d 556, 560 (6th Cir. 2008). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. Id. at 560-61. A court may find facts by a preponderance of the evidence when calculating the appropriate guidelines range. United States v. Gates, 461 F.3d 703, 707-08 (6th Cir. 2006). Once a court has determined the appropriate sentencing range, it should then consider that range in light of the other relevant § 3553(a) factors. Thompson, 515 F.3d at 561.

Parker pleaded guilty to one count of Theft Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(A).

### A.  The Probation Office Calculation

The Probation Office correctly calculated Parkers' Guideline calculations as follows using the United States Sentencing Guidelines ("USSG") §2B1.1. (R. 29: Final PSR ¶¶ 25-34, PageID 127-8).

| Count 1:  18 U.S.C. §666(a)(1)(A): Theft Concerning Programs Receiving Federal Funds | | |
|---|---|---|
| Base offense level | 6 | § 2B1.1(a)(2) |
| More than $150,000 of loss | +10 | § 2B1.1(b)(1)(F) |
| Adjusted base offense level for misrepresentation on behalf of a government agency | +2 | § 2B1.1(b)(9)(A) |
| Abuse of position of trust or special skill | +2 | §3B1.3 |
| Total Offense Level before acceptance of responsibility | 20 | |
| Acceptance of responsibility | -2 | § 3E1.1(a) |

| Acceptance of responsibility | -1 | § 3E1.1(b) |
|---|---|---|
| Final Offense Level | 17 | |

**B.**     **The Court Should Overrule Parker's Objections to the PSR**

Parker objected to the loss amount calculation and the two-level increase for misrepresentation on behalf a government agency. (R. 29: Final PSR, PageID 139). The Government will prove the loss amount at sentencing through witness testimony and exhibits of financial documents.

Parker's objection to the USSG § 2B1.1(b)(9)(A) was her incorrect belief that the enhancement was reserved for situations where one used the organization's status to facilitate the procurement of funds from the victim. (R. 29: Final PSR, PageID 139).

The Sentencing Guidelines allow a district court to enhance a sentence by two levels when a fraud "involved a misrepresentation that the defendant was acting on behalf of ... a government agency." U.S.S.G. § 2B1.1(b)(9)(A). The examples listed in the application notes are obviously illustrative not exhaustive, and thus provide no mandate for limiting the scope of the enhancement's actual language. United States v. Wiant, 314 F.3d 826, 828–29 (6th Cir. 2003). In United States v. Huntley, 961 F. Supp. 2d 409, 410 (E.D.N.Y. 2013), the court found that U.S.S.G. § 2B1.1(b)(9)(A) applied to a defendant who embezzled state funds earmarked for a non-profit organization under her control.

Here, the evidence supports the enhancement's application. Parker misrepresented to tenants that she was collected rent in cash from tenants, when in fact, she diverted the funds to herself. In using debit and credit cards, Parker misrepresented that the purchases were going to the CVNDC, when in fact, they did not. Parker also misrepresented to banks that she was acting on behalf of a government agency when she redeposited checks and wrote checks to herself. Accordingly, the Court should overrule Parker's objection.

## III.   **SECTION 3553(a) FACTORS**

In this case, in light of the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offenses and provide just punishment, and the need to afford adequate deterrence, the government respectfully recommends that the maximum sentence within the Guidelines is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors set forth in Title 18, Section 3553 of the United States Code in imposing sentence. In Blackwell, 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors. While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable. Reasonableness contains two facets: substantive and procedural. In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

(Citations omitted.)  Id.  The Sixth Circuit has stated that, "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect considerations listed in § 3553(a) and to allow for meaningful appellate review.'" United States v. Tanner, 382 F. App'x. 421, 423 (6th Cir. 2010) (quoting United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007) and United States v. Mayberry, 540 F.3d 506, 518 (6th Cir. 2008)).  Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

### A. Nature and Circumstances of the Offense

Parker was "the fox guarding the hen house." Despite having an extensive and escalating criminal history of prior convictions for passing bad checks, grand theft, forgery, aggravated theft, and misuse of credit cards, she, as the executive director of the CNVDC, was in a position of trust handling the non-profit's finances. Parker exploited the CNVDC's trust to manage its financial affairs in order to fund her lifestyle. The evidence shows that she engaged in multiple schemes to steal, embezzle, and convert CNVDC's monies for her personal use. Knowing that CNVDC was dedicated to the betterment of the community, when she stole its money, demonstrates Parker's intent to harm this victim.

Furthermore, Parker's knowledge of the CNVDC structure made her crimes even more egregious. As executive director, there was no check and balance of financial accounts. As such, Parker's criminal conduct, which lasted over three years, was serious, both because of its extended duration, and because of its nature, which involved exploitations of numerous bank, credit card, debit card, and cash transactions, deceiving tenants, and the callous disregard or the well-being of the CNVDC, all for her own financial gain. The criminal conduct was sufficiently serious to warrant a maximum Guidelines sentence.

### B. History and Characteristics of the Defendant

Parker abused the trust placed in her by the CNVDC from 2014-2016 while serving as executive director. Her criminal history showed a troubling pattern of fraud, theft, and financial crimes on multiple occasions, dating back as early as to 1993, when she was 21. Parker's predation on financial crimes warrants a maximum sentence within the Guidelines range.

**C.** **Need of the Sentence to Reflect the Serious of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

Imposing the maximum sentence within the range suggested by the Guidelines would reflect the seriousness of Parker's offenses, promote respect for the law, and provide just punishment. As demonstrated above, Parker's conduct was egregious and her crimes were serious. The substantial harm caused to the CNVDC by Parker warrants substantial punishment. Only a significant sentence will promote proper respect for the law and provide just punishment for her crimes.

**D.** **The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant**

Imposing the maximum sentence within the Guidelines range would also deter others from exploiting their clients and using client money to enrich themselves. United States v. Flores-Machicote, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); United States v. Miller, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); United States v. Jackson, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'"). As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." United States v. Panyard, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009).

Parker's offenses were not isolated incidents. Her scheme was rational, calculated and executed over a span of three years. The Sixth Circuit has acknowledged, ". . . economic and

fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." <u>United States v. Peppel</u>, 707 F.3d 627, 637 (6th Cir. 2013) (quoting <u>United States v. Martin</u>, 455 F.3d 1227, 1240 (11th Cir. 2006)).  A sentence of 33 months for Count 1—the maximum sentence within the Guidelines range would deter others in positions of trust from preying on the CNVDC.

## IV.    RESTITUTION ANALYSIS

### A.    Restitution is mandatory and shall be ordered.

Restitution orders are authorized by statute, 18 U.S.C. §§ 3663, 3663A, and 3664, and are distinct and separate from the United States Sentencing Guidelines.  Restitution constitutes punishment.  United States v. Schulte, 264 F.3d 656 (6th Cir. 2001); see also United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001) (stating restitution is "punitive rather than compensatory in nature").  "Although the guidelines mandate imposition of restitution where allowable under the statutes, the restitution statutes function independently from the guidelines and do not rely on the guidelines for their validity."  United States v. Sosebee, 419 F.3d 451, 462 (6th Cir. 2005).  "Restitution under the MVRA is a criminal penalty and a component of the defendant's sentence."  United States v. Adams, 363 F.3d 363 (5th Cir. 2004) (quoting United States v. Chaney, 964 F.2d 437, 451 (5th. Cir. 1992).

The court determines the amount of restitution.  The MVRA specifically states that the amount of restitution should equal the "amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the Defendant."  18 U.S.C. § 3664(f)(1)(A) (when a court orders restitution, the amount of restitution should equal the "amount of each victim's losses *as determined by the court*."  Sosebee, 419 F.3d at 462 (quoting 18 U.S.C. § 3664(f)(1)(A) (emphasis in original)).

When sentencing a Defendant convicted of an offense against property under Title 18 of the United States Code, including any offense committed by fraud or deceit, the Mandatory Victims Restitution Act ("MVRA") requires the court to order that the Defendant make restitution to the victim of that offense.  18 U.S.C. §§ 3663A(a)(1); 3663A(c)(1)(A)(ii).  The

MVRA requires those convicted of offenses against property under Title 18 to pay restitution for victims' losses. United States v. Elson, 577 F.3d 713, 721 (6th Cir. 2009).

The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Under the MVRA, a victim is any person harmed "as a result of the commission of an offense… including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the Defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." United States v. Elson, 577 F.3d 713, 730 (6th Cir. 2009) (quoting 18 U.S.C. § 3663A(a)(2)). The MVRA "does not require a victim to have a subjective belief that he or she has been harmed. Rather, it is left to the court to make that determination." United States v. Teadt, 2016 WL 3455353 (6th Cir. Jun 24, 2016).

**B.  Restitution should be made payable by Defendant Tamiko Parker, to the Collinwood & Nottingham Villages Development Corporation, in the amount of $203,087.61.**

Below is a chart that summarized the amounts of CNVDC funds that Parker converted to her personal use:

| Financial Institution | Date | Category of Loss | Restitution Amount |
|---|---|---|---|
| CNVDC PNC Account x6451 | October 2015 – March 2016 | Double deposits<br>• 20 redeposits | $30,967.34 |
| CNVDC PNC Account x6451 | February 2015 – July 2015 | Cash withdrawals<br>• Six times | $21,968.44 |
| CNVDC PNC Account x6451 | December 2014 – September 2015 | Checks to self<br>• Two checks | $8,500.00 |
| CNVDC PNC Account x6451 | October 2015 – March 2016 | Checks to Lamont Johnson<br>• Multiple | $10,316.00 |
| CNVDC Chase Account x6235 | April 28, 2015 | Money Order to self<br>• One time | $5,030.00 |

| Financial Institution | Date | Category of Loss | Restitution Amount |
| --- | --- | --- | --- |
| CNVDC Chase Account x0354 | May 2015 – July 2015 | Cash withdrawals<br>• Multiple | $27,928.08 |
| CNVDC Chase Account x0354 | October 2015 – March 2016 | Checks to self<br>• Multiple | $10,800.00 |
| CNVDC Chase Account x0354 | March 2015 – June 2015 | Debit card/ATM<br>• Victoria's Secret,<br>• Harley Davidson,<br>• Horseshoe Casino,<br>• Atlantic City, and<br>• Las Vegas | $24,939.35 |
| CNVDC Chase Account x0354 | October 2015 – March 2016 | Checks to Lamont Johnson<br>• Multiple | $25,295.00 |
| CNVDC Chase Credit x6235 | September 2014 – July 2015 | Credit card purchases<br>• Sephora,<br>• TJ Maxx, and<br>• Pier One | $5,666.05 |
| Home Depot Credit x8034 | February 2015 – January 2016 | Credit card purchases<br>• Home appliances | $8,062.35 |
| Cash rent | January 2015 – October 2015 | Missing rent<br>• Multiple | $23,615.00 |
| Total | | | $203,087.61 |

## C. Restitution Order Terms Requested

The United States requests that the Court establish the following conditions of restitution payment in accordance with the Court's authority under 18 U.S.C. §§ 3572 and 3664(f), which should apply until such time as Parker has satisfied the financial obligations to be imposed by the judgment. Payment of restitution is due immediately. Any restitution amount that remains unpaid when Parker's supervision commences is to be paid on a monthly basis at a rate of at least 25% of her gross earnings, to be changed during supervision, if needed, based on each her changed circumstances, pursuant to 18 U.S.C. § 3572(d)(3). If Parker receives an inheritance,

any settlements (including divorce settlement and personal injury settlement), gifts, tax refunds, bonuses, lawsuit awards, and any other receipt of money (to include, but not be limited to, gambling proceeds, lottery winnings, and money found or discovered) she must, within 5 days of receipt, apply 100% of the value of such resources to any restitution still owed.

## V. CONCLUSION

For the foregoing reasons, as well as those to be articulated at the sentencing and loss hearing, the United States respectfully requests that this Court sentence Parker to 33 months in prison months on Count 1 and that the Court order immediate payment of restitution by Parker. Restitution payments should be made payable and shall be sent to: the Clerk of Court at U.S. Court House, 801 West Superior Avenue, Suite 1-127, Cleveland, Ohio 44113.